UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------

MATTHEW WILKING,

               Plaintiff,

       v.

QUINTANA ENERGY SERVICES, INC.,
CHRISTOPHER J. BAKER, CORBIN J.
ROBERTSON, JR., DALTON BOUTTÈ, JR.,
ROCKY L. DUCKWORTH, GUNNAR
ELIASSEN, BOBBY S. SHACKOULS, and
DAG SKINDLO,

               Defendants.

----------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Matthew Wilking ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Quintana Energy Services, Inc. ("Quintana" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Quintana will be acquired by KLX Energy Services, Inc. ("KLXE" or "Parent"), through its wholly owned subsidiaries Krypton Intermediate, LLC ("Acquiror") and Krypton Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On May 3, 2020, Quintana and KLXE issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 3, 2020 (the "Merger Agreement") to sell Quintana to KLXE.  Under the terms of the Merger Agreement, each Quintana stockholder will receive 0.4844 shares of KLXE common stock for each share of Quintana common stock they own (the "Merger Consideration").  Upon closing, KLXE stockholders are expected to own approximately 59% and Quintana stockholders are expected to own approximately 41% of the fully diluted shares of the combined company.

3.      On June 2, 2020, KLXE filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Quintana stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Quintana management's financial projections for Quintana and KLXE relied upon by the Company's financial advisor, Tudor, Pickering, Holt & Co. ("TPH"), for its financial analyses and the data and inputs underlying the valuation analyses performed by TPH; and (ii) the background of the Proposed Transaction.  Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Quintana's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

### JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Quintana's common stock trades on the New York Stock Exchange which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Quintana.

9.     Defendant Quintana is a Delaware corporation with its principal executive offices located at 1415 Louisiana Street, Suite 2900, Houston, Texas 77002.  The Company is a provider of diversified oilfield services to leading onshore oil and natural gas exploration and production companies operating in both conventional and unconventional plays in all of the active major basins throughout the US.  Quintana's common stock trades on the New York Stock Exchange under the ticker symbol "QES."

10.     Defendant Christopher J. Baker ("Baker") has been President, Chief Executive Officer ("CEO") and a director of the Company since August 2019.

11.     Defendant Corbin J. Robertson, Jr. ("Robertson") has served as Chairman of the Board since the Company's formation and as a director of the Company since April 2017.

12.     Defendant Dalton Boutté, Jr. ("Boutté") has been a director of the Company since February 2018.

13.     Defendant Rocky L. Duckworth ("Duckworth") has been a director of the Company since February 2018.

14.     Defendant Gunnar Eliassen ("Eliassen") has been a director of the Company since February 2018.

15.     Defendant Bobby S. Shackouls ("Shackouls") has been a director of the Company since January 2019.

16.     Defendant Dag Skindlo ("Skindlo") has been a director of the Company since April 2017.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     KLXE is a Delaware corporation with its principal executive offices located at 1300 Corporate Center Way Wellington, Florida 33414.  It is a leading US onshore provider of mission critical oilfield services focused on completion, intervention and production activities for the most technically demanding wells.  KLXE's personnel are supported by a broad portfolio of specialized tools and equipment, including innovative proprietary tools developed by KLXE's in-house research and development team.  KLXE's common stock trades on the NASDAQ Global Select Market under the ticker symbol "KLXE."

19.     Acquiror is a Delaware corporation and an indirect wholly owned subsidiary of Parent.

20.     Merger Sub is a Delaware corporation and an indirect wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Quintana is a growth-oriented provider of diversified oilfield services to leading onshore oil and natural gas E&P companies operating in conventional and unconventional plays in all of the active major basins throughout the United States.  The Company classifies its services into four reportable segments: (1) Directional Drilling, (2) Pressure Pumping, (3) Pressure Control and (4) Wireline.

22.     Quintana's Directional Drilling segment enables efficient drilling and guidance of the horizontal section of a wellbore using a technologically-advanced fleet of downhole motors and 115 MWD kits.

23.     The Company's Pressure Pumping segment includes hydraulic fracturing, cementing and acidizing services, and such services are supported by a high-quality pressure pumping fleet of approximately 253,150 hydraulic horsepower as of December 31, 2019. Quintana's primary pressure pumping focus is on large hydraulic fracturing jobs.

24.     Quintana's Pressure Control segment includes various forms of well control, completions and workover applications through the Company's 24 coiled tubing units (10 of which are Large Diameter units), 36 rig-assisted snubbing units and ancillary equipment.

25.     As of December 31, 2019, the Company's Wireline segment included 33 wireline units providing a full range of pump-down services in support of unconventional completions, and cased-hole wireline services enabling reservoir characterization.

**The Proposed Transaction**

26.     On May 3, 2020, Quintana and KLXE issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

WELLINGTON, Fla. and HOUSTON, May 03, 2020 --  KLX Energy Services Holdings, Inc. ("KLXE") (NASDAQ: KLXE) and Quintana Energy Services, Inc. ("QES") (NYSE: QES) today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger transaction. The combined company will have an industry-leading, asset-light product and service offering present in all major US onshore oil and gas basins, with more than $1 billion of pro forma fiscal year 2019 revenue and approximately $106 million in fiscal year 2019 adjusted EBITDA, excluding an estimated $40 million of annualized cost synergies and a strong liquidity profile with approximately $118 million of cash1 and a $100 million revolving credit facility.

Under the terms of the Merger Agreement, which has been unanimously approved by the Boards of Directors of both companies, QES shareholders will receive 0.4844 shares of KLXE common stock for each share of QES common stock (the "Exchange Ratio"). Upon closing, KLXE and QES shareholders will, respectively, own approximately 59% and 41% of the equity of the combined company on a fully diluted basis. The combined company will retain the KLX Energy Services corporate name, the listing will remain on Nasdaq under the ticker "KLXE" and the corporate headquarters will be moved to Houston, Texas.

Tom McCaffrey, President and CEO of KLXE, said, "QES will add directional drilling, snubbing and well control services to KLXE's already broad range of product and service lines ("PSLs"). We will be rationalizing two of the largest fleets of coiled tubing and wireline assets, which will dramatically reduce future capital spending requirements and which will facilitate the pull-through of KLXE's asset-light products and services. As QES has previously announced the idling of its capital-intensive frac business, we intend to repurpose the vast majority of the pressure pumping equipment to support what will become the largest fleet of large diameter coiled tubing assets in North America. Additionally, we will repurpose some of the pressure pumping equipment to support the wireline fleet, which will also be one of the largest in the US, and one of the largest independent providers of directional drilling services.

"KLXE has successfully demonstrated that the provision of coiled tubing services along with KLXE's broad range of asset-light products and services results in the addition of new customers as well as the capture of a greater share of customer spend. Fundamentally, this transaction allows the combined company to pursue what we know to be a successful, returns (ROIC)-focused strategy, while positioning the combined company to weather the current storm and ultimately, to grow on a significantly-reduced capital expenditure budget.

"We expect this transaction will also generate significant annualized cost synergies of at least $40 million within 12 months, which include substantial savings from the closure of KLXE's corporate headquarters in Wellington, Florida and the combination of both companies' Houston headquarters. In addition, KLXE's broad

range of intervention services assures the combined company will be on the front end of the recovery," concluded McCaffrey.

John Collins, Chairman of the Board of KLXE, added, "It is our view that consolidation in the oilfield services industry is essential to remain cost-competitive in an environment where oil prices and demand may be depressed for an extended period. Our complementary operations and cultures and our shared commitment to customer satisfaction will provide us with an enhanced ability to serve our customers and to create value for shareholders."

Corbin J Robertson Jr., Chairman of the Board of QES, added, "We are pleased to announce the combination of these two strong companies and the resulting creation of a leading US onshore oilfield services company. We look forward to working with the KLXE Board and team, and we are excited about the value creation potential for all stakeholders."

Christopher J. Baker, President and CEO of QES, added, "We believe this combination affords us a first-mover advantage and positions the combined company not only to weather the current market dislocation but also to provide an industry-leading product and service offering across, and drilling solutions to, our blue-chip customer base. We are enthusiastic about the many financial and strategic merits of this merger, including the combined company's leading positions in many of its PSLs. This broadened suite of solutions will be extremely attractive to our customers who are all seeking to consolidate purchasing with trusted, high-quality service providers. Additionally, we believe that our downhole motor technology, vertical integration and in-house machining capacity within QES's drilling segment will serve to reduce KLXE's downhole tool costs and will allow for cross-pollination of motor and tool technologies to provide best-in-class reliability and performance.

"The QES team and I look forward to combining with the team at KLXE. We share a strong culture of operational excellence and customer satisfaction, which will position us to generate long-term shareholder value," concluded Baker.

\*\*\*

**Leadership, Governance and Headquarters**

Both KLXE and QES contribute highly experienced management teams with a significant track record of success. Chris Baker, President and CEO of QES, will be President and CEO. Tom McCaffrey, President and CEO of KLXE, will be a member of the Board of Directors of the combined company and will be Chairman the Integration Committee of the Board.  Keefer Lehner, EVP and Chief Financial Officer of QES, will be EVP and Chief Financial Officer.

Upon closing of the transaction, the combined company's Board of Directors will consist of nine directors, five of whom will be from the legacy KLXE Board, including John Collins as Chairman, and four of whom will be from the legacy QES Board.

**Insiders' Interests in the Proposed Transaction**

27.     Quintana insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Quintana.

28.     Notably, several Company insiders will secure positions for themselves with the combined company.  For example, four current members of the Board will serve on the combined company's board of directors.  Defendants Boutté, Eliassen, Robertson, and Skindlo have been identified as Quintana designees and will be appointed to serve as directors of the combined company.  Additionally, the Merger Agreement provides that defendant Boutté will serve as Chairman of the KLXE Compensation Committee following the merger.

29.     Moreover, the Merger Agreement further provides: (i) defendant Baker will be appointed to serve as President and CEO of KLXE; (ii) Keefer M. Lehner, Executive Vice President and Chief Financial Officer ("CFO") of Quintana, will be appointed to serve as Executive Vice President and CFO of KLXE; and (iii) Quintana's Executive Vice President, General Counsel, Chief Compliance Officer and Corporate Secretary, Max L. Bouthillette, will be appointed Executive Vice President, General Counsel and Chief Compliance Officer of KLXE upon completion of the Proposed Transaction.

30.     Quintana insiders also stand to reap substantial financial benefits for securing the deal with KLXE.  Pursuant to the Merger Agreement, all outstanding options, restricted stock units, and phantom stock units will vest and convert into the right to receive cash payments.  The

following table summarizes the value of the transaction related compensation Company insiders stand to receive:

| | Cash[1] | Equity[2] | Perquisites/ Benefits[3] | Total |
|---|---|---|---|---|
| **Executive Officers** | | | | |
| Christopher J. Baker *President and Chief Executive Officer* | $2,685,995 | $452,574 | $24,687 | $3,163,256 |
| Keefer M. Lehner *Executive Vice President and Chief Financial Officer* | $1,511,598 | $357,765 | $ 6,858 | $1,876,221 |
| Max L. Bouthillette *Executive Vice President, General Counsel, Chief Compliance Officer and Corporate Secretary* | $1,322,648 | $241,774 | $25,164 | $1,589,586 |
| **Non-Employee Directors** | | | | |
| Corbin J. Robertson, Jr. | $ — | $ 23,102 | $ — | $ 23,102 |
| Dag Skindlo | $ — | $ 23,102 | $ — | $ 23,102 |
| Gunnar Eliassen | $ — | $ 23,102 | $ — | $ 23,102 |
| Rocky L. Duckworth | $ — | $ 23,102 | $ — | $ 23,102 |
| Dalton Boutté, Jr. | $ — | $ 23,102 | $ — | $ 23,102 |
| Bobby S. Shackouls | $ — | $ 23,102 | $ — | $ 23,102 |

## The Registration Statement Contains Numerous Material Misstatements or Omissions

31.     Defendants caused to be filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Quintana's stockholders.   The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

32.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company management's financial projections for Quintana and KLXE and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, TPH; and (ii) the background of the Proposed Transaction.

### *Material Omissions Concerning the Financial Projections and TPH's Financial Analyses*

33.     The Registration Statement omits material information regarding Company management's financial projections for Quintana and KLXE.

34.     For example, in connection with TPH's *Discounted Cash Flow Analysis* of Quintana and KLXE, the Registration Statement sets forth that TPH utilized "the estimated future unlevered free cash flows that QES and KLXE are expected to generate during the fourth quarter of 2020 and each of the fiscal years ended 2021 through 2022, as reflected in the Forecasts." Registration Statement at 118.  For each of the *QES 2020 Recovery Case*, *QES 2021 Recovery Case, QES Downside Sensitivity Case* and *KLXE Downside Sensitivity Case,* however, the Registration Statement only discloses ***levered*** free cash flow figures that Quintana and KLXE are expected to generate during the fourth quarter of 2020 and each of the fiscal years ended 2021 through 2022 and not ***unlevered*** free cash flow figures as utilized by TPH in its analyses.

35.     Additionally, with respect to each of the *QES 2020 Recovery Case*, *QES 2021 Recovery Case, QES Downside Sensitivity Case* and *KLXE Downside Sensitivity Case*, the Registration Statement fails to disclose all line items underlying: (i) Adjusted EBITDA, including (a) EBIT, (b) interest expense, (c) taxes, (d) depreciation and amortization, (e) one-time expenses, and (f) non-cash compensation; and (ii) Levered Free Cash Flow, including (a) costs, (b) interest expense, (c) cash taxes, and (d) changes in net working capital.

36.     The Registration Statement also fails to disclose material information regarding TPH's financial analyses.

37.     The Registration Statement describes TPH's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of TPH's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Quintana's public stockholders are unable

to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on TPH's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

38.     With respect to TPH's *Discounted Cash Flow Analysis* of Quintana, the Registration Statement fails to disclose: (i) the estimated future unlevered free cash flows that Quintana is expected to generate during the fourth quarter of 2020 and each of the fiscal years ended 2021 through 2022; and (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 15% to 25%.

39.     With respect to TPH's *Discounted Cash Flow Analysis* of KLXE, the Registration Statement fails to disclose: (i) the estimated future unlevered free cash flows that KLXE is expected to generate during the fourth quarter of 2020 and each of the fiscal years ended 2021 through 2022; and (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 15% to 25%.

40.     With respect to TPH's *Discounted Cash Flow Accretion/Dilution Analysis*, the Registration Statement fails to disclose: (i) the estimated unlevered free cash flows for the combined company through fiscal year 2022; (ii) the combined company's estimated adjusted EBITDA for fiscal year 2023 utilized to calculate the terminal value of the combined company; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 15% to 25%.

41.     With respect to TPH's *Illustrative Implied Future Share Price Analysis*, the Registration Statement fails to disclose the net debt at book value utilized in the analysis.

42.     Without such undisclosed information, Quintana stockholders cannot evaluate for themselves whether the financial analyses performed by TPH were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness

opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which TPH's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

43.     The omission of this material information renders the statements in the "Certain QES Unaudited Prospective Financial and Operating Information" and "Opinion of QES's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

44.     The Registration Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

45.     For example, the Registration Statement sets forth that "[i]n late summer of 2019, the QES Board authorized the QES management team to identify potential merger counterparties and to engage in preliminary discussions with a potential counterparty . . ."  *Id.* at 88.  The Registration Statement further sets forth that during 2020 "QES management continued to review and engage in discussions with potential merger partners in accordance with the prior mandate from the QES Board to evaluate strategic opportunities."  *Id*. at 89.  In addition, "[d]uring 2019 and early 2020, QES management held discussions with another oilfield services company ("Company A") regarding a potential acquisition of Company A by QES."  *Id*.  The Registration Statement, however, fails to disclose whether Quintana ever entered into confidentiality agreements with potential merger partners, including Company A and, if so, whether the confidentiality agreements include a "don't-ask, don't-waive" ("DADW") standstill provision that is presently precluding potential merger partners, including Company A, from submitting a

topping bid for the Company.

46.     The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company.  If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Registration Statement.

47.     Any reasonable Quintana stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

48.     The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

49.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Quintana will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.   The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about Quintana management's financial projections for Quintana and KLXE relied upon by TPH for its financial analyses, the data and inputs underlying the valuation analyses performed by TPH, and the background of the Proposed Transaction.   The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

53.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

54.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore,

injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

56.     Plaintiff repeats all previous allegations as if set forth in full.

57.     The Individual Defendants acted as controlling persons of Quintana within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Quintana, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

60.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the

Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Quintana's stockholders will be irreparably harmed.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Quintana, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Quintana stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  June 19, 2020

WEISSLAW LLP

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*